## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RAYMOND E. BLAKE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civ. No. 11-146-LPS |
| | : | |
| CARL C. DANBERG, et al., | : | |
| | : | |
| Defendants. | : | |

Raymond E. Blake, Howard R. Young Correctional Institution, Wilmington, Delaware, Pro Se Plaintiff.

## MEMORANDUM OPINION

July 29, 2013
Wilmington, Delaware

STARK, U.S. District Judge:

## I.   INTRODUCTION

Plaintiff Raymond E. Blake ("Plaintiff") filed this action pursuant to 42 U.S.C. § 1983

alleging violations of his constitutional rights.[1]  Plaintiff is incarcerated at the Howard R. Young

Correctional Institution in Wilmington, Delaware.  He appears *pro se* and has been granted leave

to proceed *in forma pauperis*.  (D.I. 7)  The Court screened the original Complaint and gave

Plaintiff leave to amend.  An Amended Complaint was filed on July 9, 2012.  (D.I. 15)  The

Court proceeds to review and screen the Amended Complaint pursuant to 28 U.S.C. § 1915 and

§ 1915A.

## II.   BACKGROUND

The Amended Complaint references and relies upon the exhibits attached to it.

Therefore, the Court will treat those exhibits as part of the Amended Complaint.  *See In re*

*Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("[A] document integral

to or explicitly relied upon in [a] complaint may be considered.").  Plaintiff alleges that

Defendants conspired to violate his constitutional rights.  He seeks injunctive relief as well as

compensatory and punitive damages.

The Amended Complaint alleges that on November 8, 2010, Defendants Joshua Wilkers

("Wilkers") and Joseph Leary ("Leary"), both of whom are Wilmington police officers,

---

[1]Pursuant to 42 U.S.C. § 1983, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

apprehended Plaintiff while he was driving his mother's car.[2]  (D.I. 15 at 1)  After Wilkers and

Leary handcuffed Plaintiff, he was searched and the officers discovered "a small amount of

illegal contraband." (*Id.* at 2) While Leary searched the vehicle, Wilkers took Plaintiff to an

unmarked SUV, pulled out his weapon, and set it on his lap – with Plaintiff seated next to him.

Plaintiff alleges that Wilkers indicated that several of Plaintiff's friends were under a federal

investigation, threatening Plaintiff "that if he didn't cooperate he would assure that Plaintiff

would disappear forever and no one would know what happened to him." (*Id.* at 3)  Plaintiff was

taken to the police station for processing.  He was not arrested nor charged with any crimes.[3]

(*See id.* at Ex. A)  Plaintiff "fooled officers to think that he would indeed cooperate with their

requests and scare tactics to the point that officers released him back out into society." (*Id.* at 3)

Plaintiff then "skipped town," angering Wilkers and Leary for not cooperating, being instead "a

no-good informant." (*Id.* at 4)

Plaintiff alleges that Defendant Looney ("Looney"), the supervisor of Wilkers and Leary,

gave permission to "hunt down Plaintiff by any means necessary and place whatever charges on

Plaintiff to assure a conviction." (*Id.*)  The plan was "executed" on the night of January 19,

2011, when Plaintiff and his associate, Neena Rodriguez ("Rodriguez"), were approached by

Wilkers and Defendant Andrea Janvier ("Janvier"), a detective. (*Id.*)  They placed Plaintiff on

---

[2]Plaintiff had been identified as an individual who was selling drugs.  A confidential informant placed a telephone call to meet with Plaintiff in an attempt to purchase drugs, and Plaintiff was taken into custody at the appointed meeting place. (*See* D.I. 15 Ex. A)

[3]The November 12, 2010 police report refers to Plaintiff's status as "pending-inactive." (*Id.*)

the ground and took him to the police station.[4] (*Id.*) A search of Plaintiff's residence revealed

drugs and drug paraphernalia. (*Id.*) Plaintiff was arrested and charged with possession of drug

paraphernalia and possession of marijuana. (*Id.* at Ex. A) On January 26, 2012, Plaintiff was

convicted after a three-day jury trial of trafficking in heroin and related charges. *See Blake v.*

*State*, 38 A.3d 1254 (Del. 2012) (table decision).

## III.   LEGAL STANDARDS

This Court must dismiss, at the earliest practicable time, certain *in forma pauperis* actions

that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is

immune from such relief. *See* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions). The Court

must accept all factual allegations in a complaint as true and take them in the light most

favorable to a *pro se* plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *Phillips v.*

*County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008). Because Plaintiff proceeds *pro se*, his

pleading is liberally construed and his Complaint, "however inartfully pleaded, must be held to

less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94

(internal quotation marks omitted).

An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v.*

*Williams*, 490 U.S. 319, 325 (1989). Under 28 U.S.C. § 1915(e)(2)(B)(i), a court may dismiss a

complaint as frivolous if it is "based on an indisputably meritless legal theory" or a "clearly

baseless" or "fantastic or delusional" factual scenario. *Neitzke*, 490 at 327-28; *see also Wilson v.*

*Rackmill*, 878 F.2d 772, 774 (3d Cir. 1989); *Deutsch v. United States*, 67 F.3d 1080, 1091-92 (3d

---

[4]The January 19, 2011 police report states that Wilkers and Janvier saw "what appeared
to be a hand-to-hand drug transaction." (D.I. 15 Ex. A) As Wilkers approached Plaintiff, he
discarded, "what appeared to be pre-packaged heroin, on the ground." (*Id.*)

Cir. 1995) (holding frivolous a suit alleging that prison officials took inmate's pen and refused to give it back).

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) is identical to the legal standard used when ruling on Rule 12(b)(6) motions. *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). However, before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. § 1915, the Court must grant Plaintiff leave to amend his complaint, unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). When determining whether dismissal is appropriate, the Court conducts a two-part analysis. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the factual and legal elements of a claim are separated. *See id.* The Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *See id.* at 210-11. The assumption of truth is inapplicable to legal conclusions or to "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. Second, the Court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Fowler*, 578 F.3d at 211. In other words, the complaint must do more than allege the plaintiff's entitlement to relief; rather, it must "show" such an entitlement with its facts. *Id.* A claim is facially plausible when its factual content allows the Court to draw a reasonable inference that the defendant is liable for the

4

misconduct alleged. *See Iqbal*, 556 U.S. at 678. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

## IV.   DISCUSSION

Plaintiff's main claim is that Defendants conspired to violate his constitutional rights. However, throughout the Amended Complaint, he also raises other claims. Each will be discussed in turn.

### A.   False Police Reports

Plaintiff alleges that the November 12, 2010 police report (D.I. 15 Ex. A) of the events of November 8, 2010 is faulty as it contains the following inaccuracies: (1) it "lies" in stating that Plaintiff was processed at the police station; (2) the color of the vehicle that Plaintiff was driving is incorrect; and (3) it mentions that there was an attempt to purchase drugs by a reliable confidential informant from Plaintiff, but he was "just stopped and taken into custody without ever breaking any law in the least." (D.I. 15 at 5-6) In addition, the Amended Complaint alleges that police officers and detectives falsified police documents in order to violate Plaintiff's constitutional rights.

"[T]he mere existence of an allegedly incorrect police report fails to implicate constitutional rights." *Jarrett v. Township of Bensalem*, 312 F. App'x 505, 507 (3d Cir. Feb. 20, 2009). In addition, Plaintiff misreads the police report, which states, "[t]he suspect and the suspected narcotics were then transported to central for processing." (D.I. 15 Ex. A) Although a subtle distinction, the fact is that rather than state that Plaintiff was processed, the report states

that Plaintiff was taken in for processing – but it does not state that he was, in fact, processed. In addition, while Plaintiff was not arrested, the police report refers to his criminal activities of possession of cocaine with intent to deliver and maintaining a vehicle and dwelling for keeping controlled substances and for drug distribution.

To the extent that Plaintiff raises false police report claims, his claims are frivolous and will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

**B.     Inconsistent Testimony**

Plaintiff alleges that Wilkers provided testimony during the preliminary hearing inconsistent with the January 19, 2011 police report, as Wilkers testified that: (1) Plaintiff recognized police officers and tossed heroin onto the ground (D.I. 15 at 6); (2) a concerned citizen had provided information identifying Plaintiff, but records show that police officers never had an identification of Plaintiff to prove that he was the individual selling drugs (*id.* at 7); (3) Plaintiff was apprehended in a vehicle stop, even though Plaintiff broke no traffic laws, committed no crime, and was never given a summons or ticket for violating any traffic laws or Miranda warnings (*id.*); (4) Plaintiff operated a purplish vehicle on November 8, 2010, but the police report indicates that Plaintiff operated a grey vehicle (*id.* at 8); and (5) the November 8, 2012 vehicle stop was a "felony car stop," police officers rushed Plaintiff with weapons, Plaintiff was placed under arrest, and put in an unmarked SUV, but Plaintiff "never" committed a crime (*id.* at 8-9). In addition, Plaintiff alleges that inconsistent testimony occurred when Leary testified that police officers never processed Plaintiff on the night of November 8, 2010, even though the police report states that Plaintiff was processed. (*Id.* at 9-10)

6

At best, Plaintiff's allegations refer to discrepancies, not constitutional violations or even allegations that the proffered testimony was knowingly false. In addition, to the extent that Plaintiff attempts to raise a malicious prosecution claim based upon Defendants' testimony, the claim fails. "To prevail on a malicious prosecution claim under section 1983, a plaintiff must show that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *McKenna v. City of Philadelphia*, 582 F.3d 447, 461 (3d Cir. 2009). To satisfy the second element – favorable termination – the "prior criminal case must have been disposed of in a way that indicates the innocence of the accused." *Kossler v. Crisanti*, 564 F.3d 181, 187 (3d Cir. 2009).

Plaintiff cannot establish that he was maliciously prosecuted at least because the underlying criminal proceeding did not terminate in a manner reflecting his innocence of the charged offenses. Accordingly, to the extent that Plaintiff raises claims based upon inconsistent testimony or for malicious prosecution, the Court determines the claims are frivolous and they will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

## C.    Personal Involvement/Respondeat Superior

Plaintiff alleges that "all mentioned officers and supervisors who failed to govern the barbaric, underhanded tactics utilized by the Wilmington Police Department are at fault for 'not' establishing preventive policies to safeguard African American minorities from the mounts of racial profiling, excessive police force, perjurized [sic] and/or falsified maliciously, while in a

culpable mind statements, statements being drafted in police documentation of said minorities."

(D.I. 15 at 10) Delaware Governor Jack A. Markell ("Markell") is named as a defendant "for

failing to implement a preventive policy to deter Caucasian police officers who operate in the

predominantly urban sections of Wilmington, Delaware from racially profiling minorities and

setting the conspiratorial atmosphere in which caused the constitutional injuries that harmed

Plaintiff." (*Id.* at 29) Plaintiff alleges that Mayor James E. Baker ("Baker") "is at fault for 'not'

supervising the City of Wilmington, Delaware's police force" and "for failing to ward off any

conspiratorial hardships and/or brutal policing that may occur towards the citizens of

Wilmington, Delaware and its minority and/or urban community." (*Id.* at 29-30) Plaintiff wrote

to Baker, Wilmington Police Chief Michael Szczerba ("Szczerba"), the Wilmington Police

Department, Delaware Department of Correction ("DOC") Commissioner Carl C. Danberg

("Danberg"), and Attorney General of the State of Delaware Beau Biden ("Biden") complaining

of his encounters with the police officers, but he received no responses. (*Id.* at 10-11)

It is apparent from the allegations in the Amended Complaint that the foregoing

individuals are named as Defendants based upon their supervisory positions. A defendant in a

civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot

be held responsible for a constitutional violation which he or she neither participated in nor

approved. *See Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007). "Personal involvement

can be shown through allegations of personal direction or of actual knowledge and

acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). The Third Circuit

has reiterated that a § 1983 claim cannot be premised upon a theory of respondeat superior and

that, in order to establish liability for deprivation of a constitutional right, a party must show

8

personal involvement by each defendant. *See Brito v. United States Dep't of Justice*, 392 F. App'x 11, 14 (3d Cir. Aug. 18, 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009); *Rode v. Dellarciprete*, 845 F.2d at 1207).

"Because vicarious liability is inapplicable to § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. In *Iqbal*, the Supreme Court emphasized that "[i]n a § 1983 suit – here masters do not answer for the torts of their servants – the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. "Thus, when a plaintiff sues an official under § 1983 for conduct 'arising from his or her superintendent responsibilities,' the plaintiff must plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well." *Dodds v. Richardson*, 614 F.3d 1185, 1198 (10th Cir. 2010). The factors necessary to establish a § 1983 violation will vary with the constitutional provision at issue. *Id.*

Under pre-*Iqbal* Third Circuit precedent, "[t]here are two theories of supervisory liability," one under which supervisors can be liable if they "established and maintained a policy, practice or custom which directly caused [the] constitutional harm," and another under which they can be liable if they "participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations." *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010) (internal quotation marks omitted). "Particularly after *Iqbal*, the connection between the supervisor's

9

directions and the constitutional deprivation must be sufficient to demonstrate a plausible nexus

or affirmative link between the directions and the specific deprivation of constitutional rights at

issue." *Id.* at 130.

The Third Circuit has recognized the potential effect that *Iqbal* might have in altering the

standard for supervisory liability in a § 1983 suit but, to date, has declined to decide whether

*Iqbal* requires narrowing of the scope of the test. *See Santiago*, 629 F.3d at 130 n.8; *Argueta v.*

*United States Immigration and Customs Enforcement*, 643 F.3d 60 (3d Cir. 2011) ("To date, we

have refrained from answering the question of whether *Iqbal* eliminated – or at least narrowed

the scope of – supervisory liability because it was ultimately unnecessary to do so in order to

dispose of the appeal then before us."). Hence, it appears that, under a supervisory theory of

liability, and even in light of *Iqbal*, personal involvement by a defendant remains the touchstone

for establishing liability for the violation of a plaintiff's constitutional right.[5] *See Williams v.*

*Lackawanna Cnty. Prison*, 2010 WL 1491132, at \*5 (M.D. Pa. Apr. 13, 2010).

Facts showing personal involvement of the defendant must be asserted; such assertions

may be made through allegations of specific facts showing that a defendant expressly directed the

deprivation of a plaintiff's constitutional rights or created such policies under which the

subordinates had no discretion but to apply the policies in a fashion which actually produced the

alleged deprivation; *e.g.,* supervisory liability may attach if the plaintiff asserts facts showing that

---

[5]"'Supervision' entails, among other things, training, defining expected performance by
promulgating rules or otherwise, monitoring adherence to performance standards, and responding
to unacceptable performance whether through individualized discipline or further rulemaking."
*Sample v. Diecks*, 885 F.2d 1099, 1116 (3d Cir. 1989). "For the purpose of defining the standard
for liability of a supervisor under § 1983, the characterization of a particular aspect of
supervision is unimportant." *Id.* at 1116-17.

the supervisor's actions were "the moving force" behind the harm suffered by the plaintiff. *See*

*Sample*, 885 F.2d at 1117-18; *see also Iqbal*, 566 U.S. at 677-686; *City of Canton v. Harris*, 489

U.S. 378 (1989).

The allegations directed towards Markell, Baker, Szczerba, Danberg, and Biden are

conclusory and provide no specific facts to support Plaintiff's claims that each of them violated

his constitutional rights, that they expressly directed the deprivation of his constitutional rights,

or that they created policies wherein subordinates had no discretion but to apply them in a

fashion which actually produced the alleged deprivation. The claims against these Defendants

fail to satisfy the *Iqbal* pleading requirements. Therefore, the Court will dismiss the supervisory

claims raised against Markell, Baker, Szczerba, Danberg, and Biden as frivolous pursuant to 28

U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

## D.       **Prosecutorial Immunity**

Plaintiff alleges that Defendant Deputy Attorney General Andrew Vella ("Vella") chose

to prosecute him "with unjust regards to the facts." (D.I. at 11) Vella is immune from suit.

Prosecutors should not be encumbered by the threat of civil liability while performing

judicial or quasi-judicial functions. *See Odd v. Malone*, 538 F.3d 202, 208 (3d Cir. 2008). A

prosecutor enjoys absolute immunity from liability for actions taken in connection with judicial

proceedings. *See id., aff'd sub. nom., Schneyder v. Smith*, 653 F.3d 313 (3d Cir. 2011). Absolute

immunity from § 1983 claims attaches to the prosecutor's decision to initiate a prosecution and

generally includes activities conducted in court, such as presenting evidence or legal arguments.

*See Imbler v. Pachtman*, 424 U.S. 409, 424, 430 (1976).

Plaintiff faults Vella for instituting criminal charges against him. Vella has prosecutorial

immunity for his actions. Therefore, the Court will dismiss the claim as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

### E. Municipal Liability

Plaintiff alleges that Defendant Wilmington Police Department ("Police Department") targets minorities for purposes of humiliation and is the headquarters of the defendants who conspired to violate his constitutional rights. (D.I. 15 at 35) He alleges that Defendant City of Wilmington, Delaware ("City") subjected him to mistreatment in a direct conspiratorial bond with Defendants by not implementing a preventive policy to safeguard minorities who are targeted by "racist European officers." (*Id.* at 36)

A municipality cannot be held liable under a theory of respondeat superior. A municipality may only be held liable under § 1983 when the "execution of a government's policy or custom . . . inflicts the injury." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990). A government policy is established by a "decisionmaker possessing final authority," while a custom arises from a "course of conduct . . . so permanent and well settled as to virtually constitute law." *Andrews*, 895 F.2d at 1480 (citing *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978)). Accordingly, a plaintiff seeking to recover from a municipality must (1) identify an allegedly unconstitutional policy or custom, (2) demonstrate that the municipality, through its deliberate and culpable conduct, was the "moving force" behind the injury alleged; and (3) demonstrate a direct causal link between the municipal action and the alleged deprivation of federal rights. *See Board of the County Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).

In addition, to establish the requisite deliberate indifference, a plaintiff must show that:

"(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999). The plaintiff must be able to "show both contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents and circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate." *Montgomery v. DeSimone*, 159 F.3d 120, 127 (3d Cir. 1998).

Even when liberally construing the allegations in the Amended Complaint, it fails to set forth sufficient factual information to support a reasonable inference that race played any role in Plaintiff's arrest, the imposition of criminal charges, and subsequent trial. Indeed, Plaintiff's mere assertion and conclusory allegations that his race played a part in his interactions with Defendants in November 2010 and January 2011, do not suffice. "Law does not blindly ascribe to race all personal conflicts between individuals of different races." *Hawkins v. Pepsico, Inc.*, 203 F.3d 274, 282 (4th Cir. 2000). Further, the Amended Complaint alleges no facts that would allow a reasonable fact-finder to conclude that any alleged unlawful conduct by the individual police officers or detectives arose from a policy, practice, or custom of the City through its Police Department.

Plaintiff's claims against the City and its Police Department cannot stand. Therefore, the Court will dismiss the claims as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

**F.     Search**

13

Plaintiff alleges that Wilkers conducted an unlawful search on November 8, 2010, in violation of the Fourth Amendment, even though Plaintiff broke no laws or violated any legal standards. Wilkers testified that after a confidential informant contacted Plaintiff for the delivery of drugs, Plaintiff went to the appointed location, and Wilkers conducted a traffic stop of a vehicle driven by Plaintiff. (*Id.* at Tr. 44-46) Wilkers performed the safety pat-down and continued into Plaintiff's individual pockets, pulling each inside out to verify that nothing was stuck in the seams. (*Id.* at Tr. 46-47) Plaintiff, relying upon Wilkers testimony, alleges that even after Wilkers was assured that Plaintiff did not possess any weapons, Wilkers continued to rummage through Plaintiff's person and pockets. (D.I. 15 at 8; Ex. C at Tr. 46-47)

A pat-down search is covered by the Fourth Amendment. *See Terry v. Ohio*, 392 U.S. 1, 16 (1968). The constitutionality of a pat-down is judged by a standard of reasonableness. *See id.* at 19-22; *see also United States v. Sharpe*, 470 U.S. 675, 685 (1985) ("The Fourth Amendment is not, of course, a guarantee against all searches and seizures, but only against unreasonable searches and seizures."). Reasonableness is determined "by balancing the need to search [or seize] against the invasion which the search [or seizure] entails." *Terry*, 392 U.S. at 21 (internal quotation marks omitted).

A police officer may conduct "a reasonable search for weapons for the protection of the . . . officer, where [the officer] has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual." *Terry*, 392 U.S. at 27. To justify a pat-down, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21. Factors that support reasonable suspicion include the presence of a suspect

in a high crime area, behavior that is nervous or evasive, and "behavior that conforms to police officers' specialized knowledge of criminal activity." *Spears v. Leporace*, 449 F. App'x 187, 189 (3d Cir. Nov. 3, 2011) (internal quotation marks omitted).

Where an officer suspects an individual was engaged in drug trafficking and the officer "became concerned for his safety because persons involved with drugs often carry weapons," a safety frisk may be "the very essence of the practice sanctioned by *Terry v. Ohio*." *United States v. Sanchez*, 398 F. App'x 842, 843 (3d Cir. Oct. 28, 2010) (internal quotation marks omitted); *see also United States v. Binion*, 570 F.3d 1034, 1039 (8th Cir. 2009) ("[A]n officer's reasonable belief that someone is involved in drug dealing can support a suspicion that the person is armed since weapons are often present incident to the drug business.").

Here, the allegations of the Amended Complaint, in conjunction with its exhibits, set forth reasonable suspicion to justify a pat-down. In light of the foregoing, the Court concludes that the Amended Complaint fails state a claim for an unlawful search. The Court will dismiss the claim as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

**G.    Conspiracy**

Plaintiff alleges that all of the named defendants engaged in a conspiracy to deprive him of his constitutional rights. More particularly, he alleges that: (1) Defendants "were all in a conspiratorial agreement to cause unjust violations of the African-American male minority Plaintiff" (D.I. 15 at 9); (2) on November 8, 2010, Wilkers, Leary, and Brown conspired to release him with the hopes that he would cooperate in an ongoing investigation (*id.*); and (3) all parties "are in a conspirator[ial] agreement to allow the excessive violations of Plaintiff's rights to continue to go on, without 'granting' Plaintiff any support from hardship" (*id.* at 9, 11). In

15

addition, Plaintiff alleges that: (1) Szczerba allowed and/or conspired with members of the Police

Department in the violation of Plaintiff's constitutional rights (*id.* at 30); (2) Looney, Brown,

Detective Debonaventura ("Debonaventura"), Detective Ciber ("Ciber"), Leary, Wilkers, and

Janvier directly conspired with all Defendants who arrested Plaintiff and caused constitutional

violations (*id.* at 31-35); and (3) the City subjected him to mistreatment in a direct conspiratorial

bond with Defendants by not implementing a preventive policy to safeguard minorities who are

targeted by "racist European officers" (*id.* at 36). Finally, Plaintiff alleges that Vella engaged in a

conspiracy by allowing charges to be filed even though "police documentation was visibly faulty

and or tainted in light of untruthfulness." (*Id.* at 36-37)

For a conspiracy claim, there must be evidence of (1) an actual violation of a right

protected under § 1983 and (2) actions taken in concert by defendants with the specific intent to

violate that right. *See Williams v. Fedor,* 69 F. Supp. 2d 649, 665-66 (M.D. Pa.), *aff'd,* 211 F.3d

1263 (3d Cir. 2000). *See also Parkway Garage, Inc. v. City of Phila.,* 5 F.3d 685, 700 (3d Cir.

1993) (plaintiff must show that two or more conspirators reached agreement to deprive him of

constitutional right under color of law).

Plaintiff's conspiracy claims are based upon legal conclusions. Moreover, the Amended

Complaint does not indicate that deprivations of Plaintiff's constitutional rights occurred or that

Defendants reached an agreement to deprive Plaintiff of his constitutional rights as is required for

a conspiracy claim. For the above reasons the Court will dismiss the conspiracy claims as

frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

## H.      Habeas Corpus

The original Complaint was filed on February 17, 2011.  The Amended Complaint was filed on July 9, 2012, subsequent to Plaintiff's January 2012 trial and conviction.  To the extent that Plaintiff attempts to challenge his conviction, his sole federal remedy for challenging the fact or duration of his confinement is by way of habeas corpus.  *See Preiser v. Rodriguez*, 411 U.S. 475 (1973); *see also Torrence v. Thompson*, 435 F. App'x 56 (3d Cir. June 3, 2011). Furthermore, a plaintiff cannot recover under § 1983 for alleged wrongful incarceration unless he proves that his conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.  *See Heck v. Humphrey*, 512 U.S. 477, 487 (1994).  In considering *Heck* and summarizing the interplay between habeas and § 1983 claims, the Supreme Court explained that "a state prisoner's § 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – if success in that action would necessarily demonstrate the invalidity of the confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005).

Here, Plaintiff has not alleged or proven that his conviction was reversed or invalidated as provided by *Heck*.  Further, his claims present the type of claims addressed in *Heck*; a finding that Plaintiff's conviction was procured by unconstitutional means would necessarily imply the invalidity of his conviction.  Therefore, to the extent Plaintiff seeks damages for his current incarceration, his claim is frivolous.  *See Neitzke*, 490 U.S. at 326.

For the above reasons, the Court will dismiss the claim as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

## V.    CONCLUSION

For the above reasons, the Court will dismiss the Amended Complaint as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).  Plaintiff was previously given an opportunity to correct pleading deficiencies, but failed to do so. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (stating court may curtail or deny request for leave to amend where there is "repeated failure to cure deficiencies by amendments previously allowed" and there would be "futility of amendment"). The Court finds that further amendment is futile.

An appropriate Order follows.